%JS 44   (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Devon Robotics, LLC; Devon Health Services, Inc. and John A. Bennett, M.D.

## DEFENDANTS

Gaspar DeViedma

**(b)** County of Residence of First Listed Plaintiff   Montgomery
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   Gloucester, New Jersey
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Mark L. Rhoades, Esquire Mitts Milavec, LLC, Two Logan Square, 12th Floor, Philadelphia, PA 19103; 215-569-1800

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1   U.S. Government Plaintiff

☐ 3   Federal Question
(U.S. Government Not a Party)

☐ 2   U.S. Government Defendant

☒ 4   Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                             and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☒ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | **LABOR** | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☒ 380 Other Personal Property Damage | | ☐ 710 Fair Labor Standards Act | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | **SOCIAL SECURITY** | ☐ 720 Labor/Mgmt. Relations | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 861 HIA (1395ff) | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 862 Black Lung (923) | ☐ 740 Railway Labor Act | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 863 DIWC/DIWW (405(g)) | ☐ 790 Other Labor Litigation | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 864 SSID Title XVI | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 865 RSI (405(g)) | | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | **FEDERAL TAX SUITS** | | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 871 IRS—Third Party 26 USC 7609 | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | **IMMIGRATION** | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of State Statutes |
| | | | ☐ 463 Habeas Corpus - Alien Detainee | | |
| | | | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1   Original Proceeding

☐ 2   Removed from State Court

☐ 3   Remanded from Appellate Court

☐ 4   Reinstated or Reopened

☐ 5   Transferred from another district (specify)

☐ 6   Multidistrict Litigation

☐ 7   Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. 1332(a)

Brief description of cause:
Breach of fiduciary duty, tortious interference and defamation

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions)

JUDGE   The Hon. J. Curtis Joyner

DOCKET NUMBER   09-1819 and 09-627

DATE
08/04/2009

SIGNATURE OF ATTORNEY OF RECORD

## FOR OFFICE USE ONLY

RECEIPT #                AMOUNT                APPLYING IFP                JUDGE                MAG. JUDGE

**APPENDIX I**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

```
DEVON ROBOTICS, LLC               :       CIVIL ACTION
DEVON HEALTH SERVICES, INC. AND   :
JOHN A. BENNETT, M.D.             :
              v.                  :
GASPAR DeVIEDMA                   :
                                  :       NO.
```

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. §2241 through §2255.          ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
   and Human Services denying plaintiff Social Security Benefits                ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
   exposure to asbestos.                                                        ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
   commonly referred to as complex and that need special or intense management by
   the court.  (See reverse side of this form for a detailed explanation of special
   management cases.)                                                           ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.   (x)

| | | |
|---|---|---|
| <u>Aug. 4, 2009</u> | <u>Mark L. Rhoades</u> | <u>Plaintiffs</u> |
| **Date** | **Attorney-at-law** | **Attorney for** |
| <u>(215) 569-1800</u> | <u>(215) 569-1822</u> | <u>mrhoades@mittslaw.com</u> |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

## UNITED STATES DISTRICT COURT

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM** to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: **1100 First Ave., King of Prussia, PA 19406**

Address of Defendant: **1312 Whispering Woods Drive, Williamstown, NJ 08094**

Place of Accident, Incident or Transaction: **King of Prussia, PA**

*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?

(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))   Yes ☐   No ☒

Does this case involve multidistrict litigation possibilities?   Yes ☐   No ☒

*RELATED CASE, IF ANY:*

Case Number: **09-627   09-1819**   Judge **J. Curtis Joyner** Date Terminated: **Still Pending**

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?

   Yes ☐   No ☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?

   Yes ☒   No ☐

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?

   Yes ☐   No ☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?

   Yes ☐   No ☒

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
    (Please specify)

B. *Diversity Jurisdiction Cases:*

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☒ All other Diversity Cases
    (Please specify)

## ARBITRATION CERTIFICATION

*(Check appropriate Category)*

I, **Mark L. Rhoades**, counsel of record do hereby certify:

☒ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☒ Relief other than monetary damages is sought.

DATE: **Aug. 4, 2009** _____   **80641**
                                Attorney-at-Law                          Attorney I.D.#

**NOTE:** A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: **Aug. 4, 2009** _____   **80641**
                                Attorney-at-Law                          Attorney I.D.#

CIV. 609 (6/08)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DEVON ROBOTICS, LLC           :
1100 First Avenue               :
King of Prussia, PA 19406     :

       and                :   Civil Action No.
                          :

DEVON HEALTH SERVICES, INC.  :
1100 First Avenue               :
King of Prussia, PA 19406     :   **JURY TRIAL DEMANDED**

       and                :

JOHN A. BENNETT, M.D.      :
1100 First Avenue               :
King of Prussia, PA 19406     :

       Plaintiffs,           :

       v.                  :

GASPAR DeVIEDMA         :
1312 Whispering Woods Drive  :
Williamstown, NJ 08094     :

       Defendant         :

## PLAINTIFFS' RULE 7.1 DISCLOSURE STATEMENT

Plaintiffs, Devon Robotics, LLC, and Devon Health Services, Inc., are non-governmental corporate parties that do not have any parent corporations that are publically held owning 10% or more of their stock.

Dated:  August 4, 2009                    MITTS MILAVEC, LLC


                                          _____
                                          Maurice R. Mitts, Esquire
                                          Mark L. Rhoades, Esquire
                                          Amy L. Blackmore, Esquire
                                          Two Logan Square, 12th Floor
                                          Eighteenth and Arch Streets
                                          Philadelphia, Pennsylvania  19103
                                          Telephone (215) 569-1800

                                          *Counsel for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DEVON ROBOTICS, LLC<br>1100 First Avenue<br>King of Prussia, PA 19406 | : |
| and | : <br> :    Civil Action No. |
| DEVON HEALTH SERVICES, INC.<br>1100 First Avenue<br>King of Prussia, PA 19406 | : <br> : <br> :    **JURY TRIAL DEMANDED** |
| and | : |
| JOHN A. BENNETT, M.D.<br>1100 First Avenue<br>King of Prussia, PA 19406 | : |
|      Plaintiffs, | : |
|      v. | : |
| GASPAR DeVIEDMA<br>1312 Whispering Woods Drive<br>Williamstown, NJ 08094 | : |
|      Defendant. | : |

## COMPLAINT

Plaintiffs, Devon Robotics, LLC ("Devon Robotics"), Devon Health Services, Inc. and John A. Bennett, M.D. ("Bennett") (collectively "Devon") bring this Complaint against the Defendant, Gaspar DeViedma ("DeViedma") and aver as follows:

### PRELIMINARY STATEMENT

1.      While serving as Devon Robotics' Chief Operating Officer ("COO"), DeViedma used his position of trust and responsibility to wage a covert war against

Devon Robotics designed to benefit himself and his other employer, Health Robotics, S.r.l., all to the detriment of Devon Robotics, Devon Health and Bennett. DeViedma was brought into Devon Robotics for his expertise in the operations of two automated medication preparation robots that were designed and manufactured by his other employer, Health Robotics, S.r.l, and that were sold exclusively in North America by Devon Robotics and elsewhere in the world by other distributors. The clear understanding of the parties was that DeViedma was to help Devon Robotics put in place essential systems and protocols so that Devon Robotics could become a successful distributor for these state of the art robots in this country. Devon Robotics invested millions of dollars into the development, staffing and support of Devon Robotics' business. However, rather than provide Devon Robotics with the promised support, DeViedma began a secret campaign to destroy Devon Robotics from the inside and divert all of the developed and developing business opportunities away from Devon Robotics and to his other employer, Health Robotics, S.r.l.

2.      DeViedma used the powers bestowed on him as COO of Devon Robotics to not only steal its business, but also to secretly recruit its employees and disparage Devon Robotics and Dr. Bennett – all to advantage his other employer, Health Robotics, S.r.l. In violation of his fiduciary duties to Devon Robotics, DeViedma caused Devon to incur in excess of $5 million in debt by declaring a default on Devon Robotics while serving as its COO which led to the draw down of a letter of credit the proceeds of which went directly to his other employer Health Robotics, S.r.l.; he failed to disclose to Devon Robotics the functional problems associated with the technology that was designed by Health Robotics, S.r.l. and that was integral to the success of Devon Robotics; he failed

2

to insist upon and arrange for formal training for certain support and service employees of Devon Robotics, such that, when DeViedma left the position of COO and other individuals resigned, the employees who remained with Devon Robotics did not have the training that they should have had; he failed to establish any systems and protocols that would lead to the success of Devon Robotics; he hired and trained support personnel while serving as the COO of Devon Robotics with the intent of eventually hiring them away to work for his second employer, Health Robotics, S.r.l. and/or a related entity; and ultimately, after his secret plan to attempt to destroy Devon Robotics was fully implemented, and after he was no longer Devon Robotics' COO, he began actively interfering with Devon Robotics' contracts with its customers, defaming Devon Robotics, and took steps to hire away individuals who were performing work for Devon Robotics. DeViedma also personally benefited from the above actions because, as a shareholder in Health Robotics, S.r.l, his actions were taken for the purpose of increasing profits for Health Robotics, S.r.l. yielding increased dividends for himself. Devon brings this Complaint to hold DeViedma to account for his breached fiduciary duties and related misconduct, and to enjoin him from taking any further actions to undermine Devon Robotics, its business relationships and employees.

## THE PARTIES

3.     Plaintiff, Devon Robotics, is a limited liability company organized and existing under the laws of the Commonwealth of Pennsylvania and it maintains its principal place of business at 1100 First Avenue, King of Prussia, Pennsylvania 19406.

4.     Plaintiff, Devon Health, is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania and which maintains its principal place of business at 1100 First Avenue, King of Prussia, Pennsylvania 19406.

5.     Plaintiff, Bennett, is an individual with a business address at 1100 First Avenue, King of Prussia, Pennsylvania 19406, and he is a citizen of the Commonwealth of Pennsylvania.

6.     Defendant, DeViedma, is an individual with a residential address at 1312 Whispering Woods Drive, Williamstown, NJ 08094 and a business address at Sebastian Altmann 9A, Bozen 39100, Italy.  Upon information and belief, DeViedma is a citizen of Switzerland.

## JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332(a) because there is diversity of citizenship and the amount in controversy exceeds $75,000 exclusive of interest and costs.

8.     This Court has personal jurisdiction over DeViedma under 42 Pa.C.S. §§5301 *et seq.* and 5322 and the United States Constitution because the Defendant has transacted business within and purposefully availed himself of the Commonwealth of Pennsylvania and the Eastern District of Pennsylvania, and DeViedma should have reasonably expected his actions to have consequences within the Commonwealth of Pennsylvania and the Eastern District of Pennsylvania.

9.     Venue in the Eastern District of Pennsylvania is proper under 28 U.S.C. §1391(a)(2) because it is where a substantial part of the events giving rise to this transaction occurred.

## FACTUAL ALLEGATIONS

### Devon Robotics' Contracts with Health Robotics, S.r.l.

10.     Health Robotics, S.r.l. is an Italian company that has designed, developed, marketed and licensed robotic medication preparation products, including products known as CytoCare and IV Station.

11.     At all times relevant hereto, DeViedma was General Counsel for Health Robotics, S.r.l.

12.     On August 22, 2008, Devon Robotics entered into an agreement with Health Robotics, S.r.l. providing the exclusive distribution rights of a medication preparation robot named IV Station to Devon Robotics for the territory of North America (the "IV Station Agreement"). (A true and correct Copy of the IV Station Agreement is attached hereto as Exhibit "A").

13.     Upon execution of the IV Station Agreement with Health Robotics S.r.l., Devon became responsible for the payment of €675,000 at the occurrence of four milestones. The first milestone was the execution of the agreement, and the second milestone was the presentation of IV Station at a symposium in December, 2008. Devon Robotics has made the first two of these very large milestone payments.

14.     Thereafter, on September 12, 2008, Devon Robotics also entered into an agreement with Health Robotics, S.r.l. for the exclusive distribution rights in North America for CytoCare (the "Cytocare Agreement"). (A true and correct copy of the CytoCare Agreement is attached hereto as Exhibit "B").

5

15.     The CytoCare Agreement obligated Devon Robotics to make regular
license fee payments to Health Robotics, S.r.l. commencing the fourth quarter of 2008
and continuing thereafter through a specified date in 2013.

16.     By letter dated July 25, 2009 and received by Devon Robotics by email on
July 27, 2009 and by delivery service on July 30, 2009, Health Robotics, S.r.l. terminated
the CytoCare Agreement because of the alleged nonpayment of license fees despite
Devon Robotics' many attempts to resolve any alleged issues amicably.

17.     By letter dated July 28, 2009 and received by Devon Robotics by email on
July 28, 2009 and by delivery service on July 30, 2009, DeViedma advised Devon
Robotics that Health Robotics, S.r.l. was a declaring a material breach of the IV Station
Agreement and provided notice of its intent to terminate within thirty days.

18.     Moreover, on July 30, 2009, DeViedma advised Devon Robotics'
customers that the IV Station Agreement would be terminated within thirty days.  The
notice of material breach is without basis and is simply another malicious attempt by
DeViedma to destroy Devon Robotics' reputation and business relationships with its
customers.

19.     DeViedma negotiated both the I.V. Station Agreement and the Cytocare
Agreement on behalf of Health Robotics, S.r.l. exclusively.  Moreover, DeViedma
personally limited Devon Robotics' and Bennett's access to other personnel at Health
Robotics, S.r.l.

## The Letter of Credit

20.     Section 3.9 of the CytoCare Agreement required Devon Robotics to obtain
an irrevocable, bank-issued letter of credit for the benefit of Health Robotics, S.r.l. in the

amount of $5,000,000 as a guarantee for the payment of a portion of license fees under the CytoCare Agreement. (*See* Exhibit "B" at §§ 3.9, 1.33).

21.     On November 7, 2008, ITOCHU International Inc. ("ITOCHU") issued a $5,000,000 Letter of Credit (the "LOC") on behalf of Devon Robotics for the benefit of Health Robotics, S.r.l. (A true and correct copy of the LOC is attached hereto as Exhibit "C").

22.     The repayment of the LOC is guaranteed by Devon Robotics, Devon Health, and Bennett. (A true and correct copy of the Guaranty is attached hereto as Exhibit "D").

### DeViedma's Role as Chief Operating Officer for Devon Robotics

23.     On February 20, 2009, Devon Robotics and Health Robotics, S.r.l. entered into a Second Amendment to the CytoCare Agreement (the "Second Amendment"). (A true and correct copy of the Second Amendment is attached hereto as Exhibit "E").

24.     On March 1, 2009, pursuant to the terms of the Second Amendment, DeViedma was appointed COO for Devon Robotics.

25.     DeViedma's duties as COO included the overall management of sales, marketing, support and installation of CytoCare robots on Devon Robotics' behalf. As COO, DeViedma was obligated to report directly to Bennett, CEO of Devon Robotics. DeViedma and another executive for Health Robotics, S.r.l. were required to devote a minimum of two hundred twenty (220) days per year to providing the executive consulting services. Further, pursuant to the Second Amendment, all Devon Robotics employees were required to report directly to DeViedma. (*See* Exhibit "E" at § 40.5).

7

26.    DeViedma's appointment as COO occurred after DeViedma had been critical of the individual who had been president of Devon Robotics until early February, 2009, and with whom DeViedma had eventually refused to communicate.

27.    As set forth in the Second Amendment, DeViedma's position as COO was a temporary position. The clear understanding of the parties was that DeViedma was going to help Devon Robotics put in place essential systems and protocols so that Devon Robotics could become a self- sufficient and successful business. However, rather than provide Devon Robotics with the promised support, DeViedma began an undercover campaign to destroy Devon Robotics from the inside, deceitfully using the powers bestowed on him as COO to his own advantage and to the advantage of his other employer, Health Robotics, S.r.l.

28.    As COO for Devon Robotics, DeViedma owed Devon Robotics fiduciary duties, including the duty of loyalty.

29.    While serving as COO, DeViedma retained his position as General Counsel for Health Robotics, S.r.l. Importantly, while serving as COO, DeViedma insisted that he remain the primary contact between Devon Robotics and Health Robotics, S.r.l., effectively blocking important communications and screening the flow of information between Devon Robotics and Health Robotics, S.r.l.

30.    Upon information and belief, DeViedma accepted the position of COO to obtain direct control over all communications with actual and prospective CytoCare customers, hire personnel that would be loyal to Health Robotics, S.r.l. and/or related entities, divert business opportunities away from Devon Robotics, and control all press releases regarding the CytoCare technology for the benefit of DeViedma, a shareholder

8

with a direct financial stake in the success of Health Robotics, S.r.l., and Health Robotics, S.r.l.

**DeViedma's Improper Draw Down of the LOC to the Detriment of Devon Robotics**

31.     On March 23, 2009, <u>while still serving as Devon Robotics' COO,</u> DeViedma advised ITOCHU that Devon Robotics was in default under the CytoCare Agreement for the alleged non-payment of licensing fees. DeViedma further advised ITOCHU that Health Robotics, S.r.l. intended to draw down the entire LOC to satisfy Devon Robotics' alleged default provided Devon Robotics failed to cure the default within thirty (30) days.

32.     On March 30, 2009 – only seven days after DeViedma notified ITOCHU that Health Robotics, S.r.l. intended to draw down the entire LOC – DeViedma drew down the *entire* $5,000,000 LOC for the benefit of Health Robotics, S.r.l. without the prior knowledge or consent of Devon Robotics and to the detriment of Devon Robotics, DeViedma's principal, as well as Devon Health and Bennett who were guarantors of the LOC.

33.     DeViedma's draw down of the LOC permitted ITOCHU to demand the entire principal amount of $5,000,000 immediately due and payable from Devon Robotics, Devon Health and Bennett, which ITOCHU in fact did demand. (*See* Exhibit "D" at § 1.1). The repayment of the LOC is the subject of litigation currently pending in the Southern District of New York, and subject to a motion to transfer venue to the Eastern District of Pennsylvania so that it can be assigned to the Honorable J. Curtis Joyner who is presiding over two related cases, *Bennett et al. v. ITOCHU International*

*Inc. et al.*, No. 2:09-cv-01819 (JCJ) and *Health Robotics, LLC. et al. v. Bennett et al.*, No.
2:09-CV-0627 (JCJ).

      34.      While Health Robotics, S.r.l and DeViedma were benefited by the draw
down, DeViedma wrongfully exposed Devon Robotics, Devon Health and Bennett to
millions of dollars in liability, in clear breach of DeViedmas' fiduciary duties as Devon
Robotics' agent and COO.

### DeViedma's Failure to Advise Devon Robotics of CytoCare's Performance Issues

      35.      CytoCare is an automated robotic system which safely mixes hazardous,
life-critical cancer therapy medications.  CytoCare eliminates human handling of
chemotherapy and other hazardous IV drugs during preparation thereby reducing
clinician exposure to the drugs while increasing the accuracy of the doses created.

      36.      Health Robotics, S.r.l. represented to Devon Robotics that the CytoCare
robots were capable of producing between 20 and 30 doses of medication per hour.
However, the robots have significantly failed to live up to Health Robotics, S.r.l.'s
representations in the hospitals where they have been installed in the United States, and,
upon information and belief, elsewhere in the world.

      37.      Upon information and belief, at all relevant times, DeViedma knew that
the CytoCare technology did not perform as Health Robotics, S.r.l. had represented to
Devon Robotics and as would be required by hospital customers in order to be an
economically viable product in the United States.

      38.      Despite his role as COO of Devon Robotics, DeViedma failed to advise
Devon Robotics of CytoCare's performance problems and shielded accurate information
from Devon Robotics.  DeViedma had the ability to prevent this information from

reaching Devon Robotics because at all relevant times he remained Devon Robotics' primary contact with Health Robotics, S.r.l.

39.     Upon information and belief, rather than advise Devon Robotics of CytoCare's performance issues as required by DeViedma's fiduciary duties, DeViedma used his position as Devon Robotics' COO to cover up the technology's problems and control the information that reached Bennett and the sales and support personnel of Devon Robotics as well as actual and prospective customers regarding the performance of the robots for the benefit of Health Robotics, S.r.l.

40.     DeViedma blamed the performance problems associated with the CytoCare robots on the alleged technical incompetence of Devon Robotics and the failure of Devon Robotics' personnel to comprehend the limitations and uses of the CytoCare robot. DeViedma verbally attacked and denigrated any individual at Devon Robotics who disagreed with him or who did something with which he did not agree.

### DeViedma's Diversion of Devon Robotics Employees

41.     As COO, DeViedma was tasked with hiring and training personnel on behalf of Devon Robotics. Importantly, these personnel were required to report directly to DeViedma. (*See* Exhibit "E" at § 40.5).

42.     While COO, DeViedma did not arrange for formal training of certain employees of Devon Robotics, including John Bai and Adam Bierman, in violation of his duties as COO, such that, when DeViedma's tenure as COO ended on June 5, 2009, these individuals did not have the training that they should have had.

43.     Upon information and belief, DeViedma used his authority to hire and manage personnel at Devon Robotics with the intent of later using them to the benefit of Defendant and Health Robotics, S.r.l. and any related entities.

44.     Upon information and belief, while serving as COO, DeViedma actively created allegiances between himself and the personnel he hand-selected so that their allegiances were not to Devon Robotics but to DeViedma and his other employer, Health Robotics, S.r.l. and/or related entities.  DeViedma also alienated other Devon Robotics personnel by making demeaning and derogatory comments to those who did not agree with his management of Devon Robotics or who did something with which he did not agree.

45.     Upon information and belief, DeViedma used his control over the personnel and the loyalties he created to direct communications with actual and prospective CytoCare customers primarily to him and Health Robotics, S.r.l., divert and/or steal business opportunities away from Devon Robotics and ultimately direct them to Health Robotics, S.r.l. and/or related entities, and to control all press releases regarding the CytoCare technology so that the blame for the repeated failures of the robots could be heaped on Devon Robotics and not his other employer, Health Robotics, S.r.l.

46.     After DeViedma was terminated as COO, effective June 5, 2008, pursuant to the June 15, 2009 Fourth Amendment to the CytoCare Agreement (the "Fourth Amendment"), DeViedma effectuated his plan to have certain Devon Robotics' personnel leave their employment and work for Health Robotics, S.r.l. and/or a related entity.  (A true and correct copy of the Fourth Amendment is attached hereto as Exhibit "F").

12

47. Following DeViedma's termination as COO, several key Devon Robotics personnel, including Christine DeLorenzo ("DeLorenzo"), Luca Sancisi ("Sancisi"), Adam Bierman ("Bierman"), Katie Kimura ("Kimura") and Frank Peropat ("Peropat"), resigned from Devon Robotics, and with the possible exception of Kimura, began working for i.v. Soft, LLC, a related Health Robotics, S.r.l entity, no later than August 3, 2009. Peropat will be the President of IV Soft. These individuals all resigned without giving notice or agreeing to a transition period. Additionally, all these individuals resigned within days of each other between July 19, 2009 and July 27, 2009.

48. Upon information and belief, DeViedma is using the allegiances he created as COO to divert business opportunities away from Devon Robotics. For example, DeLorenzo and Kimura continued to communicate with DeViedma via email after he was terminated as COO on June 5, 2009 regarding potential business opportunities with hospitals. Oddly enough, Devon Robotics was not privy to these communications even though DeLorenzo and Kimura still worked for Devon Robotics at this time.

49. Moreover, DeViedma is actively using former Devon Robotics' key personnel to strengthen its relationship with Devon Robotics' existing customers while creating an irretrievable rift between the customers and Devon Robotics. By email dated August 1, 2009, DeViedma advised Devon Robotics' customers that they should contact DeLorenzo "as a point person to arrange to provide direct Health Robotics' support, free of charge, and without the necessity of a contract until further notice" if they find that "necessary support is not being adequately provided by Devon Robotics which has the

13

potential to endanger the health and safety of your patients and/or clinicians." (A true and correct copy of DeViedma's August 1, 2009 email is attached hereto as Exhibit "G").

### DeViedma's Defamatory July 30, 2009 Email to Devon Robotics' Customers

50.    On July 30, 2009, DeViedma authored a long, rambling email to several of Devon Robotics' customers, including key personnel at the Hospital of the University of Pennsylvania, Brigham and Women's Hospital, The University of Colorado Hospital, MD Anderson Cancer Center, W.A. Foote Memorial Hospital d/b/a Allegiance Health, and elsewhere, containing numerous defamatory statements that were designed to poison Devon Robotics' reputation and relationships with its current and prospective customers. Among these statements were the following:

      a.    Devon Robotics had laid off "key employees";

      b.    Dan Finley was unqualified to act as Project Manager for the IV Station validation sites;

      c.    Devon Robotics was facing "financial difficulties" and bankruptcy proceedings:

      d.    Devon Robotics personnel/support staff were unqualified to manage robot installations and that the "only three individuals that Devon Robotics had that were minimally qualified to support i.v. STATION…have departed Devon Robotics, a little more than a week ago"; and

      e.    Devon Robotics' contracts with  DeLorenzo, Sancisi, and Bierman "were terminated by Devon for financial difficulties."

A true and correct copy of DeViedma's July 30, 2009 email is attached as Exhibit "H."

14

51.     To the extent that this email message contained any information about

financial issues related to Devon Robotics, including the payment of fees to Health

Robotics, S.r.l., this is confidential information barred from disclosure under the express

terms of the I.V. Station Agreement and the Cytocare Agreement:

> **1.7** "CONFIDENTIAL INFORMATION" shall mean all information of a business or technical nature furnished by either PARTY (including training materials and produce specifications) other than information generally available to the public.

> **17. CONFIDENTIAL INFORMATION**

> **17.1 Restricted Use.** The PARTIES shall not use CONFIDENTIAL INFORMATION for any purpose other than to the limited extent necessary to perform this AGREEMENT.

> **17.2     Obligations of Confidentiality.** All PARTIES     shall     protect     CONFIDENTIAL INFORMATION with the same degree of security afforded to each PARTY'S proprietary information, and in no event, less that reasonable care.     No PARTY shall disclose CONFIDENTIAL INFORMATION to any third party, except that any PARTY may disclose CONFIDENTIAL INFORMATION to a third party that:

>> (i)      has been lawfully engaged by either PARTY to assist to perform INSTALLATION ACTIVITIES or support services, and
>> (ii)     has entered into a written enforceable AGREEMENT with either PARTY pursuant to which the third party agrees in writing not to use or disclose CONFIDENTIAL INFORMATION for any purpose other than to the limited extent necessary to perform INSTALLATION ACTIVITES or support services for either party.

> **17.3. Return or Destruction of CONFIDENTIAL INFORMATION.** Within in ten (10) days of the expiration or the termination of this AGREEMENT, all

PARTIES shall return or destroy all CONFIDENTIAL INFOMRATION.

(*See* Exhibit "A" at §§ 1.7, 17-17.3).

**1.5** "CONFIDENTIAL INFORMATION" shall mean all information of a business or technical nature furnished by either PARTY (including training materials and produce specifications) other than information generally available to the public.

## 16. CONFIDENTIAL INFORMATION

**16.1 Restricted Use**. The PARTIES shall not use CONFIDENTIAL INFORMATION for any purpose other than to the limited extent necessary to perform this AGREEMENT.

**16.2     Obligations of Confidentiality**.    All PARTIES     shall     protect     CONFIDENTIAL INFORMATION with the same degree of security afforded to each PARTY'S proprietary information, and in no event, less that reasonable care.    No PARTY shall disclose CONFIDENTIAL INFORMATION to any third party, except that any PARTY may disclose CONFIDENTIAL INFORMATION to a third party that:

(i)     has been lawfully engaged by either PARTY to assist to perform INSTALLATION ACTIVITIES or support services, and

(ii)    has entered into a written enforceable AGREEMENT with either PARTY pursuant to which the third party agrees in writing not to use or disclose CONFIDENTIAL INFORMATION for any purpose other than to the limited extent necessary to perform INSTALLATION ACTIVITES or support services for either party.

**16.3. Return or Destruction of CONFIDENTIAL INFORMATION**. Within in ten (10) days of the expiration or the termination of this AGREEMENT, all PARTIES shall return or destroy all CONFIDENTIAL INFOMRATION.

(*See* Exhibit "B" at §§ 1.5, 16-16.3).

52.     The disclosure of confidential information was designed to poison Devon Robotics' relationships with its current and prospective customers.

53.     Devon Robotics owns several IV Station validation contracts with hospitals including the University of Colorado Hospital, M.D. Anderson Cancer Center, W.A. Foote Memorial Hospital d/b/a Allegiance Health, Oschner Clinic Foundation, USC University Hospital, The Brigham and Women's Hospital, the University of Pennsylvania Health System, and Duke University Health System, and it also has signed contracts pending CytoCare installations with University of Michigan Hospital, Barbara Ann Karmanos Cancer Institute  and the Hospital of the University of Pennsylvania.

54.     These validation contracts were entered into between Health Robotics, S.r.l and the hospital customers, and then assigned to Devon Robotics by Health Robotics, S.r.l.  There is an additional validation contract directly between Devon Robotics and the University of Minnesota – Fairview Hospital.

55.     Additionally, DeViedma's email improperly characterizes the validation contracts as belonging to Health Robotics, S.r.l. *(See* Exhibits "G" and "H").  However, as noted above, the contracts and the rights arising thereunder are owned by Devon Robotics as a result of assignments from Health Robotics, S.r.l.

56.     DeViedma's July 30, 2009 email also falsely advised Devon Robotics' customers that Devon Robotics would not perform under the validation contracts.  (*See* Exhibit "H" at ¶ 13).

17

57.     Additionally, pursuant to the July 30, 2009 email, and as part of DeViedma's plan to destroy Devon Robotics and benefit himself, DeViedma falsely advised Devon Robotics' customers that Devon Robotics has laid off employees, does not have a support staff and is financially defunct. (*See* Exhibit "H" at ¶¶ 5-6 ).

58.     Because the wrongful dissemination of these false statements by DeViedma, Devon Robotics expects that some or all of its contracts will be terminated by its customers and/or Devon Robotics will lose certain monetary benefits under the validation contracts and under certain CytoCare contracts for which Devon Robotics is now and in the future will be owed money, and which Devon Robotics would have realized but for DeViedma's improper communications with Devon Robotics' customers.

59.     Additionally, Devon Robotics will have difficulty performing under its existing contracts because of DeViedma's improper diversion of key Devon Robotics' support personnel and DeViedma's failure to train the support staff while serving as COO.

### DeViedma's Stated Intent to Continue His Campaign of Destruction

60.     Devon Robotics will continue to suffer harm because DeViedma has stated that he will not cease and desist from making such defamatory statements.

61.     By email dated July 30, 2009, Maurice Mitts, Esquire, counsel for Plaintiffs, contacted DeViedma and advised DeViedma that his July 30, 2009 email contained numerous defamatory statements and that he should obtain counsel. (A true and correct copy of Mr. Mitts' July 30, 2009 email is attached hereto as Exhibit "I"). In response thereto, DeViedma made the following statement, making it clear that he does not intend to stop from making further false statements regarding Devon:

> Mr. Mitts I do not know which planet do you live on that
> would expect compliance with your demands in such a
> way, who do think you are, the President of the United
> States?

(A true and correct copy of DeViedma's July 31, 2009 email to Mr. Mitts is attached

hereto as Exhibit "J").

## COUNT I-BREACH OF FIDUCIARY DUTY

62.     Plaintiffs incorporate by reference the averments of the preceding

paragraphs as if set forth at length herein.

63.     As Devon Robotics' COO, DeViedma owed Devon Robotics fiduciary

duties, including the duty of loyalty.

64.     DeViedma breached his fiduciary duties, including the duty of loyalty, by

unreasonably and wrongfully drawing down the LOC in favor of Health Robotics, S.r.l.

when he was fully aware of Devon's financial circumstances, concealing CytoCare's

performance issues, diverting Devon Robotics employees, and interfering with the

various contracts between Devon Robotics and its customers.

65.     As a result of DeViedma's breach, Devon Robotics, Devon Health and

Bennett have suffered damages.

**WHEREFORE,** Plaintiffs Devon Robotics, LLC, Devon Health Services, Inc.

and John A. Bennett, M.D. respectfully request that this Honorable Court enter judgment

in their favor and against Gaspar DeViedma in an amount in excess of One Hundred Fifty

Thousand Dollars ($150,000.00) for compensatory and punitive damages, together with

interest, costs and attorneys fees, and such other relief as the Court deems just and proper.

## COUNT II-TORTIOUS INTERFERENCE WITH
## CURRENT AND PROSPECTIVE CONTRACTUAL RELATIONS

66.     Plaintiffs incorporate by reference the averments of the preceding paragraphs as if set forth at length herein.

67.     The anticipated termination of Devon Robotics' validation contracts and/or loss of revenue under the validation contracts is predicated, in whole or part, on false information.

68.     This false information was fabricated by DeViedma.

69.     This false information as well as Devon Robotics' confidential information was disseminated by DeViedma pursuant to his July 30, 2009 email to Devon Robotics' customers (see Exhibit "H").

70.     As a result of the non-privileged, unjustified and wrongful actions of DeViedma, Devon Robotics may lose revenue under the validation contracts and other contracts, have difficulty paying its debts, endangering the value of its equity stake.

71.     Moreover, by encouraging and soliciting Devon Robotics' personnel to leave their employment at Devon Robotics and failing to properly train support personnel while serving as Devon Robotics' COO, DeViedma has interfered with Devon Robotics' ability to perform its current contracts and its ability to obtain new contracts.

72.     Devon Robotics had a real and substantial expectation that its contracts with customers would continue until their natural end.

73.     This expectation would have been realized but for the actions of DeViedma.

74.     Devon Robotics is entitled to those damages incurred as a direct and proximate result of the prior wrongful actions of DeViedma that can be remedied by an award of monetary damages, including but not limited to, the value of the validation contracts and other contracts that Devon Robotics could have realized but for the interference by DeViedma.

75.     The actions of DeViedma were willful and malicious.

**WHEREFORE**, Plaintiffs Devon Robotics, LLC, Devon Health Services, Inc. and John A. Bennett, M.D. respectfully request that this Honorable Court enter judgment in their favor and against Gaspar DeViedma in an amount in excess of One Hundred Fifty Thousand Dollars ($150,000.00) for compensatory and punitive damages, together with interest, costs and attorneys fees, and such other relief as the Court deems just and proper.

### COUNT III-DEFAMATION

76.     Plaintiffs incorporate by reference the averments of the preceding paragraphs as if set forth at length herein.

77.     DeViedma, pursuant to his July 30, 2009 email (Exhibit "H") has spread untrue statements concerning Devon Robotics to several of Devon Robotics' customers.

78.     The July 30, 2009 email accused Devon Robotics of pursuing bankruptcy proceedings, laying off several employees, having an unqualified support staff and advised customers that Devon Robotics would not perform under its contracts with its customers. Additionally, the email falsely stated that Devon Robotics' validation contracts belonged to Health Robotics S.r.l.

79.     The statements in the July 30, 2009 email are false and misleading.

80.     The statements in the July 30, 2009 email bear and touch upon the stability and reliability of Devon Robotics' business.

81.     The publication by DeViedma of these knowingly false and defamatory statements to third parties was done with malice.

82.     The purpose of this defamatory campaign is to destroy Devon Robotics and benefit DeViedma and his employer, Health Robotics, S.r.l.

83.     DeViedma's defamatory statements have damaged Devon Robotics, and Bennett as owner of Devon Robotics, in an amount to be determined at trial.  Such damages include, but are not limited to, the value of the services under the contracts that Devon Robotics anticipates will be terminated as a result of DeViedma's false statements and the damage caused to Devon Robotics reputation in the industry.

**WHEREFORE**, Plaintiffs Devon Robotics, LLC, Devon Health Services, Inc. and John A. Bennett, M.D. respectfully request that this Honorable Court enter judgment in their favor and against Gaspar DeViedma in an amount in excess of One Hundred Fifty Thousand Dollars ($150,000.00) for compensatory and punitive damages, together with interest, costs and attorneys fees, and such other relief as the Court deems just and proper.

### COUNT IV-INJUNCTIVE RELIEF

84.     Plaintiffs incorporate by reference the averments of the preceding paragraphs as if set forth at length herein.

85.     DeViedma has falsely advised Devon Robotics' customers that Devon will not perform under certain validation contracts assigned to it by Health Robotics, S.r.l.

86.     DeViedma has also falsely surmised that the validation contracts do not belong to Devon Robotics and, rather belong to Health Robotics S.r.l.

22

87.     DeViedma has also falsely represented to Devon's customers and other third parties that Devon Robotics has laid off employees, does not have a support staff and is financially defunct.

88.     As the result of DeViedma's actions, Devon Robotics is suffering and will continue to suffer immediate and irreparable injury in that:

      a.     Devon Robotics' reputation has been, and is being damaged, in the industry as the result of DeViedma's improper communications with Devon's customers; and

      b.     Devon Robotics is exposed to numerous potential breach of contract claims due to DeViedma's statements that Devon will not render performance under the validation agreements; and

      c.     DeViedma continues to divulge confidential information that is protected from disclosure by the terms of the I.V. Station and Cytocare Agreements.

89.     Devon Robotics is entitled to immediate equitable relief in the nature of an Injunction, including but not limited, prohibiting DeViedma from communicating with Devon Robotics' customers or any third party regarding Devon's performance under its contracts or the management of its business affairs, including prohibiting the disclosure of Devon Robotics' confidential information.

90.     Greater injury will result to Devon Robotics and the public from the denial of the injunction than will result to DeViedma from the grant of the injunction.

91.    Devon Robotics has no adequate remedy at law and, unless it obtains immediate equitable and injunctive relief, it will continue to suffer immediate and irreparable harm.  As evidenced by DeViedma's email to Mr. Mitts of July 31, 2009, absent an injunction, DeViedma will continue to make such statements to the detriment of Devon.  (*See* Exhibit "J")

92.    Harm will be suffered by the public if injunctive relief is not issued and third parties may continue to believe, inter alia, that Devon Robotics will not render performance under its contracts and is financially defunct

**WHEREFORE**, Plaintiff Devon Robotics, LLC respectfully requests that this Honorable Court enter an Order preliminarily until hearing, and perpetually thereafter:

a.    enjoining DeViedma from having any further communications with Devon Robotics' customers;

b.    enjoining DeViedma from having any further communications with Devon Robotics' employees;

c.    enjoining DeViedma from disclosing confidential information protected from disclosure by the I.V. Station and Cytocare Agreements; and

d.    granting such other and further equitable relief as may be appropriate and necessary as a result of the wrongful conduct of DeViedma.

## JURY TRIAL DEMANDED

Plaintiffs hereby demand a jury trial of all claims for relief that may be tried before a jury.

Respectfully submitted,

Dated: August 4, 2009

MITTS MILAVEC, LLC

Maurice R. Mitts, Esquire
Mark L. Rhoades, Esquire
Amy L. Blackmore, Esquire
Two Logan Square, 12th Floor
Eighteenth and Arch Streets
Philadelphia, Pennsylvania 19103
Telephone (215) 569-1800

*Counsel for Plaintiffs*