IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DEVON ROBOTICS, et al.,              :
                                     :
            Plaintiffs,              :    CIVIL ACTION
                                     :
      v.                             :    No. 09-cv-3552
                                     :
GASPAR DEVIEDMA, et al.,             :
                                     :
            Defendants.              :

## MEMORANDUM AND ORDER

**Joyner, J.**                              **January 25, 2010**

Before the Court is Defendant McKesson Corporation's Motion
to Dismiss First Amended Complaint (Doc. No. 20) pursuant to
Federal Rule of Civil Procedure 12(b)(6), and responses thereto
(Doc. Nos. 28, 29).  For the reasons set forth in this
Memorandum, the Court grants Defendant's Motion in part and
denies in part.

## I. BACKGROUND

Health Robotics, S.r.L. ("HRSRL") is an Italian company that
designs, develops, markets and licences robotic medical
preparation products.  Plaintiff, Devon Robotics, signed two
agreements with HRSRL for the distribution of two robotic
medication preparation products for hospitals and health care
facilities, i.v.Station and CytoCare.  On August 22, 2008, Devon
Robotics entered into an agreement with HRSRL for the exclusive

1

distribution rights of i.v.Station in North America (the "i.v.Station Agreement").  As a result of the agreement, Devon Robotics became responsible for paying €675,000 upon the occurrence of four milestones.  Devon Robotics also entered into an agreement with HRSRL for the exclusive distribution rights of CytoCare in North America on September 12, 2008 (the "CytoCare Agreement").  This second contract obligated Devon Robotics to make regular license fee payments to HRSRL commencing in 2008 and continuing through 2013.  Mr. DeViedma, one of the defendants, signed these two contracts on behalf of HRSRL.  At the time these agreements were negotiated and signed, Mr. DeViedma served as General Counsel for HRSRL.

In December 2008, Devon Robotics began negotiating a contract with McKesson Corporation, which would give McKesson the right to distribute CytoCare within a certain territory in the United States.  DeViedma played a key role in negotiating the contract with McKesson.  On December 22, 2008, Devon Robotics and McKesson entered into a Confidential Disclosure and Non-Competition Agreement ("Confidentiality Agreement") prohibiting McKesson from divulging or using any confidential information for any purpose other than analyzing its deal with Devon.  After executing the agreement, McKesson engaged in extensive due diligence during which time Devon Robotics revealed a substantial amount of proprietary information to McKesson, including its

marketing plans, business opportunities, and potential customers.

Around March 2009, McKesson and Devon Robotics reached an oral agreement regarding the material terms of the Exclusive Distribution, Licensing, Services and Support Agreement.  The only thing that was needed to finalize the agreement was to allow McKesson's due diligence of HRSRL in Italy.  However, DeViedma, in his capacity as an officer of HRSRL, refused to permit McKesson representatives to visit Italy and complete the due diligence.

Around July 17, 2009, in an attempt to revive negotiations that had stalled, Devon Robotics offered a standstill agreement to McKesson pursuant to which Devon Robotics would be prohibited from entertaining offers from McKesson's competitors until McKesson completed its due diligence on the Devon Robotics-McKesson deal.  McKesson turned down the offer.

Later, after McKesson and Devon Robotics failed to come to an agreement, HRSRL terminated the CytoCare Agreement with Devon Robotics on July 30, 2009.  Then on August 10, 2009, McKesson and HRSRL entered into a five year agreement granting McKesson distribution rights with regard to CytoCare in various areas in North America which had previously been controlled by Devon Robotics.

3

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), a complaint should be dismissed if the plaintiff has failed to state a claim on which relief can be granted.  In evaluating a motion to dismiss, the court must take all well-pleaded factual allegations as true, but it is not required to blindly accept "a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 283 (1986); Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008).  Although a plaintiff is not required to plead detailed factual allegations, the complaint must include enough facts to "raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

## III. Discussion

McKesson's motion to dismiss is granted in part and denied in part.  Counts III and VII of the Complaint are dismissed, as is Plaintiffs' claim of tortious interference with prospective contractual relations (part of Count II).  The remainder of McKesson's Motion to Dismiss is denied.  Additionally, Plaintiffs' request for a preliminary injunction is denied (part of Count VIII).

4

**A.   Count I - Breach of Contract**

Plaintiffs contend that McKesson breached the
Confidentiality Agreement by improperly using confidential
information regarding Devon Robotics which McKesson obtained
during its due diligence on the prospective Devon Robotics -
McKesson deal.  Plaintiffs assert that McKesson used this
information in order to obtain more favorable terms in its deal
with HRSRL than it would have under a contract with Devon
Robotics.  As a result, Devon Robotics claims to have suffered
damages, including, the loss of its proprietary information,
customer lists and marketing strategies, its competitive
advantage in the industry, and revenue under the McKesson-Devon
Robotics agreement which fell through.

In order to state a claim for breach of contract, a
plaintiff must establish: (1) the existence of a contract; (2) a
breach of a duty imposed by the contract; and (3) resultant
damages.  Ware v. Rodale Press, Inc., 322 F.3d 218, 225 (3d Cir.
2003) (citing Corestates Bank, N.A. v. Cutillo, 723 A.2d 1053,
1058 (Pa. Super. Ct. 1999))(internal quotation marks omitted).

Plaintiffs have sufficiently stated a claim of breach of
contract.  The existence of the Confidentiality Agreement is not
disputed by either party.  Plaintiffs have given details
regarding the sequence of events and the context of the alleged
breach and the time frame in which the breach occurred.  As

5

Plaintiffs noted, they are not required to plead detailed factual allegations in support of their complaint under <u>Twombly</u>. Plaintiffs allegations have met the plausibility requirement to withstand a 12(b)(6) motion to dismiss. Plaintiffs have also sufficiently stated that they suffered damages in the form of loss of customer lists, marketing strategies, revenue, etc. Therefore, Defendant's Motion to Dismiss Count I is denied.

**B.  Count II - Tortious Interference with Current and Prospective Contractual Relations**

In Count II of the Complaint, Plaintiffs allege that McKesson improperly interfered with the CytoCare Agreement and with prospective contracts for supplies that are consumed by the operation of the CytoCare and other third party contracts. Plaintiffs claim that McKesson arranged to have the CytoCare Agreement terminated prematurely and improperly and then used confidential information obtained during due diligence to structure a deal between itself and HRSRL.

**1.  Tortious Interference with Current Contractual Relations**

Plaintiffs have adequately pled a claim for tortious interference with current contractual relations. Under Pennsylvania law, in order to prove tortious interference with existing contractual relations plaintiff must prove the

6

following: (1) existence of a contractual relation between the claimant and a third party; (2) purposeful action on the part of the defendant specifically intended to harm the existing relation; (3) the absence of a privilege or justification for doing so; and (4) actual legal damage as a result of defendant's conduct. <u>Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.</u>, 140 F.3d 494, 530 (3d Cir. 1998); <u>Pelagatti v. Cohen</u>, 536 A.2d 1337, 1343 (Pa. 1988); <u>Thompson Coal Co. v. Pike Coal Co.</u>, 412 A.2d 466, 471 (Pa. 1979).

Plaintiffs have pled all the necessary elements for a claim of tortious interference with current contractual relations to a sufficient degree of plausibility. Plaintiffs allege that McKesson interfered with the CytoCare Agreement and took purposeful action with the intent to harm Devon Robotics and to interfere with that contract. Additionally, Plaintiffs have given details regarding the sequence of events and the context of the interference and the time frame in which the interference occurred. Therefore, Defendant's Motion to Dismiss Plaintiffs' claim of tortious interference with current contractual relations is denied.

**2. Tortious Interference with Prospective Contractual Relations**

However, Plaintiffs' claim for tortious interference with prospective contractual relations is dismissed. Pennsylvania

distinguishes between claims for interference with existing contractual relations and claims for interference with prospective contractual relations.  Thompson Coal Co. v. Pike Coal Co., 412 A.2d 466, 470-71 (Pa. 1979).  In addition to the elements necessary to establish a claim for tortious interference with current contractual relations, a claim of tortious interference with prospective contractual relations requires a showing of the existence of prospective contracts.  Alvord-Polk, Inc. v. F. Schumacher & Co., 37 F.3d 996, 1014 (3d Cir. 1993). In determining whether there is a prospective contractual relationship in a tortious interference case, Pennsylvania courts consider whether the evidence supports a finding that there was a reasonable likelihood that the contemplated contract would have materialized absent the defendant's interference.  Glenn v. Point Park Coll., 272 A.2d 895, 898-99 (Pa. 1971).  Additionally, a plaintiff must base its claim that there was a prospective contractual relationship on something other than an existing or current relationship.  Phillips v. Selig, 959 A.2d 420, 429 (Pa. Super. Ct. 2008).

Plaintiffs have based their claim solely on the existence of the CytoCare Agreement.  They offer no evidence regarding any potential contracts which were interfered with by McKesson. Plaintiffs only refer to hypothetical contracts which might have manifested themselves as a result of the CytoCare Agreement.

Therefore, Plaintiffs' claim of tortious interference with prospective contractual relations is dismissed.

**C.  Count III - Breach of Duty to Negotiate in Good Faith**

In Count III, Plaintiffs allege Defendant breached its duty to negotiate in good faith with Plaintiffs by unilaterally cutting off all negotiations in the McKesson-Devon Robotics deal despite Devon Robotics' offer to enter a standstill agreement, by conspiring with DeViedma to have the CytoCare Agreement terminated for McKesson's benefit, and by subsequently entering an agreement with HRSRL which granted McKesson distribution rights which were previously controlled by Devon Robotics. Plaintiffs claim that McKesson had a duty to negotiate the open and undefined terms of the McKesson-Devon Robotics Agreement in good faith because the parties were so close to reaching an agreement.

A duty to negotiate in good faith requires a binding agreement between the parties expressing their commitment to negotiate together in good faith to reach a final agreement. Channel Home Ctrs.,Div. of Grace Retail Corp. v. Grossman, 795 F.2d 291, 299 (3d Cir. 1986).  A cause of action for breach of duty to negotiate in good faith requires the plaintiff to show that: (1) both parties manifested an intention to be bound by an agreement to negotiate in good faith; (2) the terms of the

agreement are sufficiently definite to be enforced; and (3) consideration was conferred.  Flight Sys., Inc. v. Elec. Data Sys. Corp., 112 F.3d 124, 130 (3d Cir. 1997).

Plaintiffs have not sufficiently stated a claim of breach of the duty to negotiate in good faith.  No where in the Complaint do Plaintiffs allege that the parties entered an agreement which would give rise to a duty to negotiate in good faith.  Plaintiffs only offer an email which states that the parties were close to reaching an agreement as evidence of this duty.  Plaintiffs merely allege that because the parties were in the middle of negotiating an agreement, Defendant had a duty to continue to negotiate in good faith.  This email does not raise a factual question about whether an agreement to negotiate in good faith existed as it only speaks to the current stage of negotiations, not to the existence of any duty.  Even assuming that an agreement to negotiate in good faith did exist, there is no evidence that there was consideration for any such agreement. Therefore, Defendant's Motion to Dismiss Count III is granted.

**D.  Count VII - Conspiracy**

In Count VII, Plaintiffs allege that McKesson and DeViedma planned and conspired to improperly terminate the CytoCare Agreement and to steal Devon Robotics' customer base and proprietary information.

10

Under Pennsylvania law, in order to establish a claim for civil conspiracy, plaintiff must allege facts which if proven would show: (1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage. McGreevey v. Stroup, 413 F.3d 359, 371 (3d Cir. 2005).  A claim for civil conspiracy also requires the plaintiff to allege an underlying tort.  Id. (citing Boyanowski v. Capital Area Intermediate Unit, 215 F.3d 396, 405 (3d Cir.2000)).  "Since liability for civil conspiracy depends on performance of some underlying tortious act, the conspiracy is not independently actionable; rather, it is a means for establishing vicarious liability for the underlying tort."  Boyanowski v. Capital Area Intermediate Unit, 215 F.3d 396, 406 (3d Cir.2000) (citing Halberstam v. Welch, 705 F.2d 472, 479 (D.C. Cir. 1983)).

Plaintiffs' allegations of civil conspiracy focus on the alleged improper termination of the CytoCare Agreement between Devon Robotics and HRSRL.  Since Plaintiffs have not alleged any underlying tortious conduct in their Complaint which would give rise to a claim of conspiracy, the claim against McKesson must be dismissed.

11

**E.  Count VIII - Injunctive Relief**

Plaintiffs have requested preliminary and permanent injunctive relief.  Defendant argues that Plaintiffs have not made a sufficient showing to justify injunctive relief. Plaintiffs contend that the Confidentiality Agreement between Devon Robotics and McKesson entitle them to injunctive relief or in the alternative that they have alleged a sufficient factual basis which entitle them to injunctive relief.  This Court declines to issue a preliminary injunction, but will consider issuing a permanent injunction should it later be proven that one is appropriate in this case.

To establish the right to relief through a preliminary injunction, the moving party must show the following: (1) success on the merits is likely; (2) irreparable injury will result if injunctive relief is denied; (3) granting the preliminary injunction will not cause greater harm to the non-movant; and (4) public interest favors injunctive relief.  Rogers v. Corbett, 468 F.3d 188, 192 (3d Cir. 2006) (citing Kos Pharms., Inc. v. Andrx Corp., 369 F.3d 700 (3d Cir. 2004)).  The standard for granting a permanent injunction differs from the standard governing a preliminary injunction.  American v. Civil Liberties Union of New Jersey v. Black Horse Pike Regional Bd. of Educ., 84 F.3d 1471, 1477 (3d Cir. 1996)).  A court may grant a permanent injunction where the moving party has shown: (1) jurisdiction is

appropriate; (2) the movant "has actually succeeded on the merits" of his claim; and (3) balancing equities favors granting injunctive relief. <u>Chao v. Rothermel</u>, 327 F.3d 223, 228 (3d Cir. 2003).

Plaintiffs' request for a preliminary injunction is denied. Injunctive relief is an extraordinary remedy and is only granted in limited circumstances.  Plaintiffs have failed to show they will suffer irreparable harm without a preliminary injunction. Plaintiffs allege that they will loose proprietary information and competitive advantage without a preliminary injunction. However, Plaintiffs have failed to articulate the extent of the immediate harm they will suffer and whether any irreparable injury will occur.  Additionally, Plaintiffs have failed to show that success on the merits of their claims is likely.  Therefore, Plaintiffs' request for a preliminary injunction is denied.

As to Plaintiffs' request for permanent injunctive relief, this is relief that the Court may consider if Plaintiffs succeed on the merits.  Since this would occur at the end of litigation, it is inappropriate for the Court to limit the remedies available to Plaintiffs at this time; therefore Defendant's motion to dismiss the claim for permanent injunctive relief is denied.

## IV. Conclusion

Counts III and VII are dismissed, as is Plaintiffs' claim of

tortious interference with prospective contractual relations. The remainder of McKesson's Motion to Dismiss is denied as is Plaintiffs' request for a preliminary injunction.