```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DEVON ROBOTICS, et al.,          :
                                 :
            Plaintiffs,           :    CIVIL ACTION
                                 :
    v.                           :    No. 09-cv-3552
                                 :
GASPAR DEVIEDMA, et al.,         :
                                 :
            Defendants.           :
```

**MEMORANDUM AND ORDER**

**Joyner, J.**                                      **October 7, 2010**

Before the Court is Defendant Gaspar DeViedma's Motion for a Protective Order (Doc. No. 40), Plaintiffs' response in opposition thereto (Doc. No. 44), and Defendant's reply (Doc. No. 45). For the reasons set forth in this Memorandum, the Court denies Defendant's Motion.

## I. BACKGROUND[1]

Plaintiffs are suing Defendant Gaspar DeViedma for breach of fiduciary duty, tortious interference with existing contractual relations, and defamation. Defendant was working for Plaintiff Devon Robotics as its Chief Operating Officer (COO) and for Health Robotics S.r.L. (HRSRL) as its General Counsel at the time

---

[1] This Court's November 30, 2009 Memorandum and Order (Docs. Nos. 31, 32) sets forth the facts and allegations serving as the basis of the claims pending in this suit. In the interest of efficiency, the present Memorandum does not repeat the Background section of the earlier Memorandum and Order.

1

of the alleged conduct giving rise to this suit. Defendant no longer works for Devon Robotics; he is currently Vice President of HRSRL.

During discovery, Plaintiffs requested that Defendant produce, among other things, "[a]ll documents relating to, discussing or identifying any communications between DeViedma and any person concerning the performance, operation and/or funding of CytoCare in installations in North America" and "[a]ll documents relating to, discussing or identifying HRSRL's termination of the CytoCare Agreement." (Pls.' First Set of Reqs. for the Produc. of Docs. Directed to Def. Gaspar DeViedma 7 No. 16, 8 No. 24.) Defendant then moved for a protective order with respect to production of "documents that are owned by his employer, HRSRL."[2] (Defs.' Mem. of Law in Supp. of Mot. for a Protective Order 1.) Defendant argues that he should not be required to produce these documents for three reasons: (1) the documents belong not to him but to his employer, a nonparty; (2) disclosure of the documents is prohibited by Italian law; and (3) disputes between Plaintiff and Defendant's employer must be resolved by arbitration. (Id. at 1-2.)

---

[2] Defendant asserts that all but one of Plaintiffs' document requests potentially call for the production of HRSRL-owned documents. (Defs.' Mem. of Law in Supp. of Mot. for a Protective Order 4.)

2

## **II. STANDARD OF REVIEW**

The Federal Rules of Civil Procedure provide for discovery of any nonprivileged matter relevant to a party's claim or defense. Fed. R. Civ. P. 26(b)(1). The court may limit the broad scope of discovery, however, for "good cause." Fed. R. Civ. P. 26(c)(1). The party seeking protection from discovery bears the burden of proving that good cause exists. Pansy v. Borough of Stroudsburg, 23 F.3d 772, 786-87 (3d Cir. 1994).

"Good cause is established on a showing that disclosure will work a clearly defined and serious injury to the party seeking closure. The injury must be shown with specificity." Id. at 786 (quoting Publicker Indus., Inc. v. Cohen, 733 F.2d 1059, 1071 (3d Cir. 1984)). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not support a good cause showing." Id. (internal quotation marks omitted).

"In considering whether good cause exists for a protective order, the federal courts have generally adopted a balancing process." Id. at 787. "[T]he court . . . must balance the requesting party's need for information against the injury that might result if uncontrolled disclosure is compelled. When the risk of harm to the owner of . . . confidential information outweighs the need for discovery, disclosure [through discovery] cannot be compelled . . . ." Id. (quoting Arthur R. Miller, Confidentiality, Protective Orders, and Public Access to the

3

Courts, 105 Harv. L. Rev. 427, 433-34 (1991) (footnote omitted)).

The Third Circuit has identified a nonexclusive set of factors that a court should consider in deciding whether good cause exists:

> (1) the interest in privacy of the party seeking protection; (2) whether the information is being sought for a legitimate purpose or an improper purpose; (3) the prevention of embarrassment, and whether that embarrassment would be particularly serious; (4) whether the information sought is important to public health and safety; (5) whether sharing of the information among litigants would promote fairness and efficiency; (6) whether the party benefitting from the order of confidentiality is a public entity or official; and (7) whether the case involves issues important to the public.

Arnold v. Pennsylvania, 477 F.3d 105, 108 (3d Cir. 2007) (citing Pansy, 23 F.3d at 787-88).[3]

### III. Discussion

1. The impact of nonparty ownership of documents

Defendant first argues that he should not be required to produce the requested documents because they "are the property of a corporation and not of the individual defendant who is the

---

[3] This Court is mindful of the Third Circuit's instruction that, "[t]o facilitate effective appellate review of a district court decision of whether to grant . . . an order of protection or confidentiality, a district court should articulate on the record findings supporting its judgment." Pansy v. Borough of Stroudsburg, 23 F.3d 772, 789 (3d Cir. 1994). The parties here do not expressly address the factors identified by Pansy. Instead, the parties rely on (1) the impact of ownership of the requested documents, (2) the impact of a foreign nondisclosure law, and (3) the impact of an arbitration clause. Because this Court does not find, based on the record before it, that any of the delineated Pansy factors are significant in resolving the present discovery dispute, this Court will evaluate the motion for a protective order based on the three factors identified by the parties as relevant.

4

target of the discovery requests." (Defs.' Mem. of Law in Supp. of Mot. for a Protective Order 1.) This argument is meritless.

Under Federal Rule of Civil Procedure 34, a party may serve on any other party a request to produce documents, including electronically stored information, "in the responding party's possession, custody, or control." Fed. R. Civ. P. 34(a). "Under this Rule, legal ownership of a document is not determinative. Possession or control over the documents is sufficient to permit a request for production." In re Sunrise Sec. Litig., 109 B.R. 658, 661 (E.D. Pa. 1990); see also Modern Eng'g, Inc. v. Peterson, No. 07-1055, 2007 U.S. Dist. LEXIS 51131, *6 (C.D. Ill. July 16, 2007) (recognizing that "'ownership' is not the issue-rather it is 'care, custody, and control'").

There are thus two circumstances under which a defendant can be required to turn over documents owned by a third party: when the defendant has actual (physical) possession of the documents, and when the defendant has "control" over documents in the physical possession of another. See, e.g., Gerling Int'l Ins. Co. v. Comm'r, 839 F.2d 131, 140 (3d Cir. 1988) ("[C]ontrol is . . . defined not only as possession, but as the legal right to obtain the documents requested on demand." (internal quotation marks omitted)); Modern Eng'g, 2007 U.S. Dist. LEXIS at *6-7 ("Possession is not determinative. Custody and control are broader than possession."); Am. Maplan Corp. v. Heilmayr, 203

F.R.D. 499, 501 (D. Kan. 2001) ("The federal courts have universally held that documents are deemed to be within the possession, custody or control of a party if the party has '<u>actual</u> possession, custody or control of the materials <u>or</u> has the legal right to obtain the documents on demand.'" (emphasis added)). Moreover, "[t]he location of the documents, whether within the territorial jurisdiction of the court or not, is irrelevant." <u>Gerling</u>, 839 F.2d at 140.

Presumably because cases involving actual possession are more straightforward, most disputed cases involve questions of "control." From the record before this Court, however, it appears that the requested documents are within the actual possession of Defendant (e.g., stored on his laptop). <u>See, e.g.</u>, Defs.' Mem. of Law in Supp. of Mot. for a Protective Order 6 & n.3, 9. Thus, Defendant's possession of requested documents renders him bound to disclose them.[4]

To the extent that documents are not within Defendant's actual possession but rather within HRSRL's sole possession, Defendant must have control over the documents before production can be required. The party seeking production bears the burden

---

[4] Defendant's extensive reliance on <u>American Maplan Corp. v. Heilmayr</u>, 203 F.R.D. 499 (D. Kan. 2001), which in any event is not binding on this Court, is misplaced. In <u>Heilmayr</u>, it was "undisputed that defendant [did] not have actual possession of the VET documents"; the court thus had to consider whether the defendant had control over the documents. <u>Id.</u> at 501-02. Because Defendant DeViedma has acknowledged that he has potentially responsive documents on his laptop–that is, in his possession–he is required to disclose those responsive documents.

6

of proving the documents are in the party's control.  Davis v. Gamesa Tech. Corp., No. 08-4536, 2009 U.S. Dist. LEXIS 97507, *4 (E.D. Pa. Oct. 20 2009).  As Moore's notes, "a party to an action who is an officer, director, or majority shareholder of a corporation may be required to produce documents in the possession of the corporation.  However, when an action is against an officer individually, and not also against the corporation, production may be denied."  7 James Wm. Moore et al., Moore's Federal Practice § 34.14 (Matthew Bender 3d ed. 2010); cf. Gerling, 839 F.2d at 138 (reversing the district court's conclusion that the party, a corporation, had control of documents in the possession of its president, a nonparty, because if the information was "possessed by [the nonparty] in his own behalf" rather than in his official capacity, the party would not have a "legally enforceable right" to the documents).

Defendant is being sued in his individual capacity.  It has not been shown that he would have the legal right to obtain and disclose documents in HRSRL's sole possession for his own litigation purposes, and to this extent he cannot be required to seek out documents from HRSRL.  Plaintiffs appear to recognize this.  See Pls.' Mem. in Opp'n to Def. Gaspar DeViedma's Mot. for a Protective Order 13-14 ("Devon is not asking HRSRL to open up its files and send documents on a trans-Atlantic journey, real or virtual, to its attorneys' offices.  Devon just wants what

7

DeViedma has in his possession or control, which presumably is just a short trip across the Delaware River from his New Jersey residence."). But cf. id. at 10 (citing a journal article for the proposition that as a shareholder of an Italian company Defendant has the right to obtain certain corporate documents on demand). For the sake of clarity, this Court reiterates that Defendant must turn over any and all responsive documents, including electronically stored information, in his actual possession. That HRSRL may "own" the documents is irrelevant.

2. The impact of a foreign nondisclosure law

Defendant next argues that he should not be required to produce the documents because the Italian Personal Data Protection Code may prohibit such disclosure. This argument is also unpersuasive.

"It is well settled that [a foreign nondisclosure] statute[] do[es] not deprive an American court of the power to order a party subject to its jurisdiction to produce evidence even though the act of production may violate that statute." Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Court for the S. Dist. of Iowa, 482 U.S. 522, 544 n.29 (1987) (emphasis added). The question is thus whether this Court should exercise its power to order discovery given a potentially conflicting foreign law. Id. at 543-44. "The exact line between reasonableness and unreasonableness [of a discovery request] in each case must be

8

drawn by the trial court, based on its knowledge of the case and of the claims and interests of the parties and the governments whose statutes and policies they invoke." Id. at 545.

The following factors are relevant to the comity analysis:

> (1) the importance to the . . . litigation of the documents or other information requested; (2) the degree of specificity of the request; (3) whether the information originated in the United States; (4) the availability of alternative means of securing the information; and (5) the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the state where the information is located.

Id. at 544 n.8 (quoting what is now Restatement (Third) of Foreign Relations § 442(1)(c) (1987)). This Court finds that the factors come out in favor of production.

The requested documents are certainly important to the litigation. Plaintiffs are suing Defendant for breach of fiduciary duty, tortious interference with existing contractual relations, and defamation. While Defendant was Plaintiffs' COO and HRSRL's General Counsel, he served as the primary contact between Plaintiffs and HRSRL. Defendant was also a pivotal player in the negotiation of a contract between Plaintiffs and McKesson Corporation, an agreement which is at the heart of this litigation. Among other things, Plaintiffs claim that Defendant concealed performance problems with CytoCare and crafted press releases blaming Plaintiffs for these problems. This Court also

9

finds that the document requests are specifically tailored to obtain documents relevant to Defendant's role as Plaintiffs' COO and his involvement with and motivations behind negotiations with McKesson.

Furthermore, from the record before it this Court finds that the requested information originated largely in the United States. As Plaintiffs' COO, Defendant operated largely out of Plaintiffs' King of Prussia office; as HRSRL's General Counsel, he operated in New Jersey as well as Italy. McKesson is a Delaware corporation, and Plaintiffs' customers were American hospitals. Moreover, much of this information may very well be physically in the United States at this time (e.g., on Defendant's laptop). Defendant is the best source of the information, as he was the pivotal player in the negotiation process, and Plaintiffs are seeking information concerning what Defendant himself knew, intended, and personally did.

Finally, while nonproduction would undermine important interests of the United States, see, e.g., Societe Internationale, 357 U.S. at 205 ("A general rule according foreign nationals a preferred position in pretrial proceedings in our courts would conflict with the principle of equal opportunity that governs the market they elected to enter."), it is unclear whether any Italian interests would actually be undermined by disclosure under these facts. As the moving party, Defendant has

the burden of proving good cause-a specific injury that would result from disclosure.  Based on the record before this Court, it is unclear whether production under the facts of this case would even violate Italian law and, if so, whether and what penalties would ensue.

The Italian law prohibits disclosure of "personal data" in certain circumstances.  "Personal data" means "any information relating to natural or legal persons, bodies or associations that are or can be identified, even indirectly, by reference to any other information including a personal identification number." Personal Data Protection Code § (4)(1)(b), Legis. Decree No. 196 of June 30, 2003 (Italy), <u>available at</u> http://www.garanteprivacy.it/garante/document?ID=1219452.  In general, and "[a]part from the cases referred to in Sections 43 and 44, it shall be prohibited to transfer personal data that are the subject of processing from the State's territory to countries outside the European Union . . . if the laws of the country of destination or transit of the data do not ensure an adequate level of protection of individuals."  <u>Id.</u> § 45(1).[5]

---

[5] The Code "appl[ies] to the processing of personal data, including data held abroad, where the processing is performed by any entity established either in the State's territory or in a place that is under the State's sovereignty," "to the processing of personal data that is performed by an entity established in the territory of a country outside the European Union, where said entity makes use in connection with the processing of equipment . . . situated in the State's territory," and "to the processing of personal data carried out by natural persons for exclusively personal purposes if the data are intended for systematic communication or dissemination."  Personal Data Protection Code § 5, Legis. Decree No. 196 of June 30, 2003 (Italy), <u>available at</u> http://www.garanteprivacy.it/garante/document?ID=1219452.

11

First, it is unclear what, if anything, in the requested documents is or contains "personal data." Defendant only says, without citation, that email addresses may be considered personal data. (Defs.' Mem. of Law in Supp. of Mot. for a Protective Order 10.) Even assuming the law does apply to the requested documents, it lists numerous circumstances under which personal data may be disclosed. For example, processing of personal data is permitted, even without the data subject's consent, "if the processing . . . is necessary to comply with an obligation imposed by a law." Id. § 24(1)(a); see also id. § 43(1)(e) (allowing transfer of personal data "to countries outside the European Union . . . to establish or defend a legal claim, provided that the data are transferred exclusively for said purposes and for no longer than is necessary"). Transfer is also permitted "if the data subject has given his/her consent", id. § 43(1)(a), "if the processing concerns data relating to legal persons, bodies or associations," id. § 43(1)(h), and "if the transfer is necessary for safeguarding a substantial public interest that is referred to by laws or regulations." Id. § 43(1)(c). "The transfer of processed personal data to a non-EU Member State shall also be permitted if it is authorised by the Garante on the basis of adequate safeguards for data subjects' rights . . . ." Id. § 44(1).

Defendant does not show why the processing of such data

12

would not be considered an obligation imposed by (U.S.) discovery law or why a transfer would not fall under the "to establish a legal claim" exception. Much of the information also likely refers to legal persons, bodies, and associations, such as Devon Robotics, McKesson, and HRSRL. Moreover, Defendant has not shown that the Italian law would be violated when this Court can provide safeguards to limit disclosure of any personal data contained in the requested documents. See generally Fed. R. Civ. P. 26(c)(1). Nor has Defendant provided any information concerning how frequently the law is enforced and what, if any, penalties have been imposed for its violation. In sum, Defendant makes nothing more than a blanket assertion that any disclosure could violate Italian law. Given the uncertainty of the proposition and the importance of the documents to this dispute, this Court finds that the comity factors weigh in favor of disclosure.

### 3. Impact of the arbitration agreement between Plaintiffs and HRSRL

Finally, Defendant argues that he should not have to disclose HRSRL-owned documents in his possession because Plaintiffs have an arbitration agreement with HRSRL, under which disputes between the signatories are to be heard in Geneva. This Court has already ruled that the claims remaining in this case-between Plaintiffs and Defendant-are not subject to

13

arbitration.  See Nov. 30, 2009 Mem. & Order (Docs. Nos. 31, 32).
Thus, Defendant's renewed reliance on the arbitration agreement
is not a ground for Defendant to avoid his discovery obligations
in the pending case.  See generally <u>Afros S.P.A. v. Krauss-Maffei
Corp.</u>, 113 F.R.D. 127, 129 (D. Del. 1986) ("If a party has
control over or shares control of documents with a third person,
then a court can order production by means of its power over the
party litigant.").

## IV. Conclusion

For the foregoing reasons, Defendant has not shown good
cause for the issuance of a protective order.  Defendant's Motion
for a Protective Order is denied.